**Freedom Law Firm, LLC**
George Haines, Esq. (#9411)
Gerardo Avalos, Esq. (#15171)
8985 S. Eastern Avenue, Suite 100
Las Vegas, NV 89123
T: (702) 880-5554
F: (702) 385-5518
ghaines@freedomlegalteam.com

**DannLaw**
Marc Dann, Esq.*
Brian Flick, Esq.**
15000 Madison Avenue
Lakewood, OH 44107
T: (216) 373-0539
F: (216) 373-0536
mdann@dannlaw.com
bflick@dannlaw.com

**The Dann Law Firm, PC**
Javier Merino, Esq.*
1520 Hwy. 130, Ste. 101
North Brunswick, NJ 08902
T: (201) 355-3440
jmerino@dannlaw.com

**LAUKAITIS LAW LLC**
Kevin Laukaitis, Esq.**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 789-4462
klaukaitis@laukaitislaw.com

*Attorneys for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

MICHAEL PIRCIO, individually and on behalf of all others similarly situated,

                                   Plaintiff,

v.

MGM RESORTS INTERNATIONAL,

                                   Defendant.

Case No.: 2:23-cv-01550

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Michael Pircio ("Plaintiff") brings this class action against MGM Resorts International ("Defendant") for its failure to properly secure and safeguard Plaintiff's and Class Members' personally identifiable information ("PII") stored within Defendant's information network.

Plaintiff makes these allegations on personal information as to those allegations pertaining to himself and his personal circumstances, and upon information and belief, based on the investigation of counsel and facts that are matters publicly known, on all other matters.

## INTRODUCTION

1.     Defendant is an international entertainment firm which runs a number of high-profile casinos across the United States, with an estimated annual revenue of over $12 billion.

2.     During the course of its regular business operations, Defendant acquired, collected, and stored Plaintiff's and Class Members' PII.

3.     At all relevant times, Defendant knew or should have known that Plaintiff and Class Members would use Defendant's services to store and/or share sensitive data, including highly confidential PII.

4.     On no later than September 7, 2023, upon information and belief, unauthorized third-party cybercriminals gained access to Plaintiff's and Class Members' PII that was maintained on Defendant's computer systems, with the intent of engaging in the misuse of the PII, including marketing and selling Plaintiff's and

Class Members' PII (the "Data Breach").

5.     The total number of individuals who have had their data exposed due to Defendant's failure to implement appropriate security safeguards is unknown at this time but is estimated to be in at least the tens of thousands based on Defendant's business.

6.     Personally identifiable information ("PII") generally incorporates information that can be used to distinguish or trace an individual's identity, and is generally defined to include certain identifiers that do not on their face name an individual, but that is considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers).

7.     The vulnerable and potentially exposed data at issue of Plaintiff and the Class stored on Defendant's information network, includes, without limitation, full names, dates of birth, addresses, email addresses, phone numbers, Social Security numbers, and/or driver's license numbers.

8.     Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that Plaintiff's and Class Members' PII was safeguarded, failing to take available steps to prevent unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use.

9.      As a result, the PII of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party—an undoubtedly nefarious third party that seeks to profit off this disclosure by defrauding Plaintiff and Class Members in the future.

10.     Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they are thus entitled to injunctive and other equitable relief.

## **JURISDICTION AND VENUE**

11.     Jurisdiction is proper in this Court under 28 U.S.C. §1332 (diversity jurisdiction). Specifically, this Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one class member is a citizen of a state different from Defendant.

12.     Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. §1367.

13.     Defendant is headquartered and routinely conducts business in the State where this district is located, has sufficient minimum contacts in this State, and has intentionally availed itself of this jurisdiction by marketing and selling products and services, and by accepting and processing payments for those products and services within this State.

14.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events that gave rise to Plaintiff's claims occurred within this District, and Defendant does business in this Judicial District.

## **THE PARTIES**

**Plaintiff Michael Pircio**

15.     Plaintiff Michael Pircio is an adult individual and, at all relevant times herein, residing in Chardon, Ohio. Plaintiff is a victim of the Data Breach.

16.     Plaintiff is a current MGM Rewards Member. MGM Rewards is a customer loyalty program used by Defendant to attract and retain customers at its facilities around the world.

17.     In order to obtain an MGM Rewards membership, Plaintiff was required to provide his PII to the Defendant, including his name, date of birth, contact information and Social Security number.

18.     As a result, Plaintiff's information was among the data accessed by an unauthorized third-party in the Data Breach.

19.     At all times herein relevant, Plaintiff is and was a member of each of the Classes.

20.     Plaintiff learned of the Data Breach on September 14, 2023 after reviewing various media reports. Having stayed at Defendant's resorts most recently as of early September 2023. Plaintiff reasonably believes his PII was accessed in the Breach.

21.     As a result, Plaintiff was injured in the form of lost time dealing with the consequences of the Data Breach, which included and continues to include: time spent verifying the legitimacy and impact of the Data Breach; time spent exploring credit monitoring and identity theft insurance options; time spent self-monitoring hisaccounts with heightened scrutiny and time spent seeking legal counsel regarding his options for remedying and/or mitigating the effects of the Data Breach.

22.     Plaintiff was also injured by the material risk to future harm he suffers based on Defendant's breach; this risk is imminent and substantial because Plaintiff's data has been exposed in the breach, the data involved, including Social Security numbers, is highly sensitive and presents a high risk of identity theft or fraud; and it is likely, given Defendant's clientele, that some of the Class's information that has been exposed has already been misused.

23.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII that he entrusted to Defendant and which was compromised in and as a result of the Data Breach.

24.     Plaintiff, as a result of the Data Breach, has increased anxiety for his loss of privacy and anxiety over the impact of cybercriminals accessing, using, and selling his PII.

25.     Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII, in combination with his name, being placed in the hands of unauthorized third

parties/criminals.

26.     Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

### Defendant MGM Resorts International

27.     Defendant MGM Resorts International is a Delaware corporation with its principal place of business located at 3600 Las Vegas Boulevard, Las Vegas, NV 89109.

28.     The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged here are currently unknown to Plaintiff.

29.     Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of the responsible parties when their identities become known.

### CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and the following Class:

> All individuals within the United States of America whose PII was exposed to unauthorized third-parties as a result of the data breach experienced by Defendant on September 7, 2023.

31.     Excluded from the Class are the following individuals and/or entities:

Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as its immediate family members.

32.    Plaintiff reserves the right to amend the above definitions or to propose subclasses in subsequent pleadings and motions for class certification.

33.    This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation, and membership in the proposed classes is easily ascertainable.

34.    <u>Numerosity</u>: A class action is the only available method for the fair and efficient adjudication of this controversy, as the members of the Class (which Plaintiff is informed and believes, and on that basis, alleges that the total number of persons is in the hundreds of thousands of individuals and can be determined analysis of Defendant's records) are so numerous that joinder of all members is impractical, if not impossible.

35.    <u>Commonality</u>: Plaintiff and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law

which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

  a. Whether Defendant had a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, using, and/or safeguarding their PII;

  b. Whether Defendant knew or should have known of the susceptibility of its data security systems to a data breach;

  c. Whether Defendant's security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts;

  d. Whether Defendant's failure to implement adequate data security measures allowed the Data Breach to occur;

  e. Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

  f. Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

  g. How and when Defendant actually learned of the Data Breach;

  h. Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its

systems, resulting in the loss of the PII of Plaintiff and Class Members;

i.      Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.      Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiff and Class Members;

k.      Whether Plaintiff and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or accounting is/are appropriate as a result of Defendant's wrongful conduct; and

l.      Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct.

36.     <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

37.     <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the Class in that the Plaintiff has the same interest in the litigation of this case as the Class Members, is committed to the vigorous prosecution of this case, and has retained competent counsel who are experienced in conducting litigation of this nature.

38.    Plaintiff is not subject to any individual defenses unique from those conceivably applicable to other Class Members or the class in its entirety. Plaintiff anticipates no management difficulties in this litigation.

39.    <u>Superiority of Class Action</u>: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member make or may make it impractical for members of the Class to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought, by each individual member of the Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants.

40.    The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately.

41.    This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class in its entirety.

42.    Defendant's policies and practices challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies and

practices hinges on Defendant's conduct with respect to the Class in its entirety, not on facts or law applicable only to Plaintiff.

43.     Unless a Class-wide injunction is issued, Defendant may continue failing to properly secure the PII of Class Members, and Defendant may continue to act unlawfully as set forth in this Complaint.

44.     Further, Defendant has acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

## COMMON FACTUAL ALLEGATIONS

### Defendant's Failed Response to the Breach

45.     On September 11, 2023, MGM posted a message informing consumers that MGM experienced a cybersecurity issue affecting some of its computer and information systems.[1] According to one cybercriminal group that has taken credit for the attack, the cybercriminals gained access to Defendant's systems by impersonating an employee to gain access credentials, a relatively simple social engineering attack.[2] Once the threat actors gained access to the network, the

---

[1] https://twitter.com/MGMResortsIntl/status/1701256032369164399?ref_src=twsrc%5Etfw%7Ctwcamp%5Etweetembed%7Ctwterm%5E1701256032369164399%7Ctwgr%5Ebd2523f4ae5a90adbd166512a6dd1eb6556ac4bd%7Ctwcon%5Es1_&ref_url=https%3A%2F%2Fwww.reuters.com%2Ftechnology%2Fmoodys-says-breach-mgm-is-credit-negative-disruption-lingers-2023-09-13%2F (last accessed Sep. 20, 2023).

[2] https://techcrunch.com/2023/09/14/mgm-cyberattack-outage-scattered-spider/ (last accessed Sept. 22, 2023)

cybercriminals deployed ransomware designed to lock down Defendant's network as leverage to force Defendant to pay a ransom.

46.     The attack lasted at least ten days, during which, MGM consumers reported being unable to use electronic room keycards, wireless internet, ATM kiosks, make electronic payments, use MGM resort services, and that electronic gaming devices like slot machines were offline.[3]

47.     The cyberattackers claim to exfiltrated at least six terabytes of data, which on information and belief include the PII of Plaintiff and Class members, from Defendant's network.[4]

48.     Defendant should have known that this ransomware attack could have happened at any time. A ransomware attack, like that experienced by Defendant, is a type of cyberattack that is frequently used to target companies due to the sensitive data they maintain.[5] Companies should treat ransomware attacks as any other data breach incident because ransomware attacks don't just hold networks hostage, "ransomware groups sell stolen data in cybercriminal forums and dark web marketplaces for additional revenue."[6]

49.     Despite these warnings, Defendant did not use reasonable security

---

[3] https://www.wusa9.com/article/news/nation-world/mgm-resorts-computers-restored-after-10-day-shutdown/507-960b53d2-c1c7-4c29-8fe7-e10b17a5d203 (last visited Sept. 22, 2023)

[4] https://www.thestack.technology/mgm-okta-ransomware/ (last visited Sept. 22, 2023)

[5] https://www.zdnet.com/article/ransomware-warning-now-attacks-are-stealing-data-as-well-as-encrypting-it/ (last visited Sept. 22, 2023)

[6] https://www.emsisoft.com/en/blog/36569/the-chance-of-data-being-stolen-in-a-ransomware-attack-is-greater-than-one-in-ten/ (last visited Sept. 22, 2023)

procedures and practices appropriate to the nature of the sensitive information they maintained for Plaintiff and Class members, allowing the attackers free access to the PII stored therein. Defendant failed to properly verify the credentials of the attacker and failed to have in place systems to prevent and detect the ransomware attack.

50.    Plaintiff further believes his PII, and that of Class members, has been or will be sold on the dark web, as that is the modus operandi of cybercriminals that commit cyber-attacks of this type.

**Defendant Collected/Stored Class Members' PII**

51.    Defendant acquired, collected, stored, and assured reasonable security over Plaintiff's and Class Members' PII.

52.    As a condition of its relationships with Plaintiff and Class Members, Defendant required that Plaintiff and Class Members entrust Defendant with highly sensitive and confidential PII.

53.    Defendant, in turn, stored that information in the part of Defendant's computer and information system that was ultimately affected by the Data Breach.

54.    By obtaining, collecting, and storing Plaintiff's and Class Members' PII, Defendant assumed legal and equitable duties and knew or should have known that they were thereafter responsible for protecting Plaintiff's and Class Members' PII from unauthorized disclosure.

55.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII.

56.     Plaintiff and Class Members relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized use of this information.

57.     Defendant could have prevented the Data Breach, which began no later than September 7, 2023, by adequately securing and encrypting and/or more securely encrypting its servers generally, as well as Plaintiff's and Class Members' PII.

58.     Defendant's negligence in safeguarding Plaintiff's and Class Members' PII is exacerbated by repeated warnings and alerts directed to protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years.

59.     Yet, despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect Plaintiff's and Class Members' PII from being compromised.

**Defendant Had an Obligation to Protect the Stolen Information**

60.     Defendant's failure to adequately secure Plaintiff's and Class Members' sensitive data breaches duties it owes Plaintiff and Class Members under statutory and common law. Moreover, Plaintiff and Class Members surrendered their highly sensitive personal data to Defendant under the implied condition that Defendant would keep it private and secure. Accordingly, Defendant also has an implied duty to safeguard their data, independent of any statute.

61.    In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[7]

62.    In light of recent high profile data breaches at other industry leading companies, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or should have known that the PII that they collected and maintained would be targeted by cybercriminals.

63.    Moreover, Defendant was, or should have been, aware of the foreseeable risk of a cyberattack, like the one it experienced. Not only did Okta publish a warning directly warning of this type of attack but in 2022, BetMGM, LLC, which is owned and operated by Defendant, experienced a data breach.[8] Since that data breach, the records of over 1.5 Million BetMGM consumers have been offered for sale on the dark web.[9]

64.    Defendant was prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices

---

[7] See 2021 Data Breach Annual Report (ITRC, Jan. 2022) (https://notified.idtheftcenter.org/s/), at 6.
[8] https://apps.web.maine.gov/online/aeviewer/ME/40/ef5d2df4-691f-4471-b476-5459bf590bae.shtml (last visited Sept. 22, 2023)
[9] https://www.securityweek.com/betmgm-confirms-breach-hackers-offer-sell-data-15-million-customers/ (last visited Sept. 22, 2023)

in or affecting commerce."[10]

65.     Defendant is a data collector as defined by NRS § 603A.030. As a data collector, Defendant must comply with the requirements of NRS § 603A.210 and NRS § 603A.215, regarding the security of PII provided to it by its customers..

66.     In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

67.     Defendant owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the PII of Plaintiff and Class Members.

68.     Defendant owed a duty to Plaintiff and Class Members to design, maintain, and test its computer systems, servers, networks, and personnel policies and procedures to ensure that the PII was adequately secured and protected.

69.     Defendant owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the PII in its

---

[10] The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. See, e.g., *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

possession, including not sharing information with other entities who maintained sub-standard data security systems.

70.    Defendant owed a duty to Plaintiff and Class Members to implement processes that would immediately detect a breach in its data security systems in a timely manner.

71.    Defendant owed a duty to Plaintiff and Class Members to act upon data security warnings and alerts in a timely fashion.

72.    Defendant owed a duty to Plaintiff and Class Members to disclose if its computer systems and data security practices were inadequate to safeguard individuals' PII from theft because such an inadequacy would be a material fact in the decision to entrust this PII to Defendant.

73.    Defendant owed a duty of care to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

74.    Defendant owed a duty to Plaintiff and Class Members to encrypt and/or more reliably encrypt Plaintiff's and Class Members' PII and monitor user behavior and activity in order to identify possible threats.

**Value of the Relevant Sensitive Information**

75.    PII are valuable commodities for which a "cyber black market" exists where criminals openly post stolen payment card numbers, Social Security numbers, and other personal information on several underground internet websites.

76.    Numerous sources cite dark web pricing for stolen identity

credentials; for example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200[11]; Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web[12]; and other sources report that criminals can also purchase access to entire company data breaches from $999 to $4,995.[13]

77.     Identity thieves can use PII, such as that of Plaintiff and Class Members, which Defendant failed to keep secure, to perpetrate a variety of crimes that harm victims—for instance, identity thieves may commit various types of government fraud such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits, or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

78.     There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used: according to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

[L]aw enforcement officials told us that in some cases, stolen data might be

---

[11] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed September 22, 2023).

[12] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed September 22, 2023).

[13] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed September 22, 2023).

held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[14]

79.    Here, Defendant knew of the importance of safeguarding PII and of the foreseeable consequences that would occur if Plaintiff's and Class Members' PII were stolen, including the significant costs that would be placed on Plaintiff and Class Members as a result of a breach of this magnitude.

80.    As detailed above, Defendant is a large, sophisticated organization with the resources to deploy robust cybersecurity protocols. It knew, or should have known, that the development and use of such protocols were necessary to fulfill its statutory and common law duties to Plaintiff and Class Members. Therefore, its failure to do so is intentional, willful, reckless and/or grossly negligent.

81.    Defendant disregarded the rights of Plaintiff and Class Members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions; (ii) failing to disclose that they did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and Class Members' PII; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence

---

[14] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* http://www.gao.gov/new.items/d07737.pdf (last accessed September 22, 2023).

and extent of the Data Breach for an unreasonable duration of time; and (v) failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

### Common Injuries & Damages Suffered by the Plaintiff and Putative Class

82.     As a result of Defendant's ineffective and inadequate data security practices, the Data Breach, and the foreseeable consequences of PII ending up in the possession of criminals, the risk of identity theft to the Plaintiff and Class Members has materialized and is present and continuing, and Plaintiff and Class Members have all sustained actual injuries and damages, including: (a) invasion of privacy; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (c) the loss of benefit of the bargain (price premium damages); (d) diminution of value of their PII; (e) invasion of privacy; and (f) the continued risk to their PII, which remains in the possession of Defendant, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PII.

83.     The Plaintiff and Class Members are at a heightened risk of identity theft for years to come.  The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal PII to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

84.     As a result of the recognized risk of identity theft, when a data breach occurs, and an individual is notified by a company that their PII was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft or fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm—yet, the resource and asset of time has been lost.

85.     Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions to remedy the harms they have or may experience as a result of the Data Breach, such as researching and verifying the legitimacy of the Data Breach.

86.     These efforts are consistent with the U.S. Government Accountability Office report in 2007 regarding data breaches in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[15]

87.     These efforts are also consistent with the steps the FTC recommends data breach victims take to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their

---

[15] See United States Government Accountability Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (June 2007), https://www.gao.gov/new.items/d07737.pdf ("GAO Report").

identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[16]

88.    The value of the PII of the Plaintiff and Class Members is valuable.[17] Its value is axiomatic, considering the value of Big Data in corporate America and the criminal consequences of cyber thefts, which include significant prison sentences and fines. Even this obvious risk to reward analysis illustrates beyond doubt that PII has considerable market value.

89.    An active and robust legitimate marketplace for PII exists. In 2019, the data brokering industry was worth roughly $200 billion.[18]

90.    As a result of the Data Breach, Plaintiff's and Class Members' PII, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the PII is now readily available, and the rarity of the PII has been lost, thereby causing additional loss of value.

---

[16] Id.

[17] See, e.g., Randall T. Soma, et al., Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 RICH. J.L. & TECH. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

[18] https://www.latimes.com/business/story/2019-11-05/column-data-brokers (last visited Sept. 22, 2023)

91.    The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII of Plaintiff and Class Members.

92.    There is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize the Private Information for identity theft crimes ——e.g., opening bank accounts in the victims' names to make purchases or to launder money; file false tax returns; take out loans or lines of credit; or file false unemployment claims.

93.    Such fraud may go undetected until debt collection calls commence months, or even years, later. An individual may not know that his or her Social Security Number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. And fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

94.    Consequently, Plaintiff and Class Members are at a present and continuous risk of fraud and identity theft for many years into the future.  The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class Member. This is a reasonable and necessary cost to monitor to protect Class Members from the risk of identity theft that arose from Defendant's Data Breach. This is a future cost that Plaintiff and Class Members would not need to bear but for Defendant's failure to safeguard their PII.

# CLAIMS FOR RELIEF

## COUNT ONE
### Negligence
### (On behalf of the Class)

95.    Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

96.    At all times herein relevant, Defendant owed Plaintiff and Class Members a duty of care, *inter alia*, to act with reasonable care to secure and safeguard their PII and to use commercially reasonable methods to do so. Defendant took on this obligation upon accepting and storing the PII of Plaintiff and Class Members in its computer systems and on its networks.

97.    Among these duties, Defendant was expected:

    a.    to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in its possession;

    b.    to protect Plaintiff's and Class Members' PII using reasonable and adequate security procedures and systems that were/are compliant with industry-standard practices;

    c.    to implement processes to detect the Data Breach quickly and to timely act on warnings about data breaches; and

    d.    to promptly notify Plaintiff and Class Members of any data breach, security incident, or intrusion that affected or may have affected their PII.

98.     Defendant knew that the PII was private and confidential and should be protected as private and confidential and, thus, Defendant owed a duty of care not to subject Plaintiff and Class Members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

99.     Defendant knew, or should have known, of the risks inherent in collecting and storing PII, the vulnerabilities of its data security systems, and the importance of adequate security.

100.    Defendant knew about numerous, well-publicized data breaches.

101.    Defendant knew, or should have known, that its data systems and networks did not adequately safeguard Plaintiff's and Class Members' PII.

102.    Only Defendant was in the position to ensure that its systems and protocols were sufficient to protect the PII that Plaintiff and Class Members had entrusted to it.

103.    Defendant breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard their PII.

104.    Because Defendant knew that a breach of its systems could damage thousands of individuals, including Plaintiff and Class Members, Defendant had a duty to adequately protect its data systems and the PII contained therein.

105.    Plaintiff's and Class Members' willingness to entrust Defendant with their PII was predicated on the understanding that Defendant would take adequate

security precautions.

106.    Moreover, only Defendant had the ability to protect its systems and the PII it stored on them from attack. Thus, Defendant had a special relationship with Plaintiff and Class Members.

107.    Defendant also had independent duties under state and federal laws that required Defendant to reasonably safeguard Plaintiff's and Class Members' PII and promptly notify them about the Data Breach. These "independent duties" are untethered to any contract between Defendant, Plaintiff, and/or the remaining Class Members.

108.    Defendant breached its general duty of care to Plaintiff and Class Members in, but not necessarily limited to, the following ways:

   a.    by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the PII of Plaintiff and Class Members;

   b.    by failing to timely and accurately disclose that Plaintiff's and Class Members' PII had been improperly acquired or accessed;

   c.    by failing to adequately protect and safeguard the PII by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured PII;

   d.    by failing to provide adequate supervision and oversight of the

PII with which it was and is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather PII of Plaintiff and Class Members, misuse the PII and intentionally disclose it to others without consent.

e.  by failing to adequately train its employees not to store PII longer than absolutely necessary;

f.  by failing to consistently enforce security policies aimed at protecting Plaintiff's and the Class Members' PII;

g.  by failing to implement processes to detect data breaches, security incidents, or intrusions quickly; and

h.  by failing to encrypt Plaintiff's and Class Members' PII and monitor user behavior and activity in order to identify possible threats.

109.  Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

110.  As a proximate and foreseeable result of Defendant's grossly negligent conduct, Plaintiff and Class Members have suffered damages and are at imminent risk of additional harms and damages.

111.  To date, Defendant has not provided sufficient information to Plaintiff and Class Members regarding the extent of the unauthorized access and continues to

breach its disclosure obligations to Plaintiff and Class Members.

112.    Further, through its failure to provide clear notification of the Data Breach to Plaintiff and Class Members, Defendant prevented Plaintiff and Class Members from taking meaningful, proactive steps to secure their PII.

113.    There is a close causal connection between Defendant's failure to implement security measures to protect the PII of Plaintiff and Class Members and the harm suffered, or risk of imminent harm suffered by Plaintiff and Class Members.

114.    Plaintiff's and Class Members' PII was accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

115.    Defendant's wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

116.    The damages Plaintiff and Class Members have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

117.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery

from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to, efforts spent researching how to prevent, detect, contest, and recover from embarrassment and identity theft;; (vi) the continued risk to their PII, which may remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PII in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

118.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

119.    Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendant's possession and are subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

## COUNT TWO
### Breach of Implied Contract
### (On behalf of the Class)

120.    Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

121.    Through its course of conduct, Defendant, Plaintiff and Class Members entered into implied contracts for Defendant to implement data security adequate to safeguard and protect the privacy of Plaintiff's and Class Members' PII.

122.    Defendant required Plaintiff and Class Members to provide and entrust their PII as a condition of obtaining Defendant's services.

123.    Defendant solicited and invited Plaintiff and Class Members to provide their PII as part of Defendant's regular business practices.

124.    Plaintiff and Class Members accepted Defendant's offers and provided their PII to Defendant.

125.    As a condition of being direct consumers of Defendant, Plaintiff and Class Members provided and entrusted their PII to Defendant.

126.    In so doing, Plaintiff and Class Members entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such non-public information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and Class Members if their data had been breached and compromised or stolen.

127.    A meeting of the minds occurred when Plaintiff and Class Members

agreed to, and did, provide their PII to Defendant, in exchange for, amongst other things, the protection of their PII.

128.    Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

129.    Defendant breached its implied contracts with Plaintiff and Class Members by failing to safeguard and protect their PII and by failing to provide accurate notice to them that their PII was compromised as a result of the Data Breach.

130.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and Class Members have suffered (and will continue to suffer) (a) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (b) actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (c) loss of the confidentiality of the stolen confidential data; (d) the illegal sale of the compromised data on the dark web; (e) lost work time; and (f) other economic and non-economic harm.

## COUNT THREE
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (On behalf of the Class)

131.    Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

132.    Every contract in this State has an implied covenant of good faith and

fair dealing, which is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

133.    Plaintiff and Class Members have complied with and performed all conditions of their contracts with Defendant.

134.    Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard PII, failing to timely and accurately disclose the Data Breach to Plaintiff and Class Members and continued acceptance of PII and storage of other personal information after Defendant knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Data Breach.

135.     Defendant acted in bad faith and/or with malicious motive in denying Plaintiff and Class Members the full benefit of their bargains as originally intended by the parties, thereby causing them injury in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, on behalf of himself and each member of the proposed Class, respectfully requests that the Court enter judgment in their favor and for the following specific relief against Defendant as follows:

1.    That the Court declare, adjudge, and decree that this action is a proper class action and certify the proposed class and/or any other appropriate subclasses under F.R.C.P. Rule 23 (b)(1), (b)(2), and/or (b)(3), including the appointment of Plaintiff's counsel as Class Counsel;

2.     For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

3.     That the Court enjoin Defendant, ordering them to cease from unlawful activities;

4.     For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

5.     For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an Order:

    a.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    b.    requiring Defendant to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

    c.    requiring Defendant to delete and purge the PII of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of

COMPLAINT
Page 34

1   Plaintiff and Class Members;

2   d.    requiring Defendant to implement and maintain a comprehensive

3   Information Security Program designed to protect the

4   confidentiality and integrity of Plaintiff's and Class Members'

5   PII;

6

7   e.    requiring Defendant to engage independent third-party security

8   auditors and internal personnel to run automated security

9   monitoring, simulated attacks, penetration tests, and audits on

10  Defendant's systems periodically;

11

12

13  f.    prohibiting Defendant from maintaining Plaintiff's and Class

14  Members' PII on a cloud-based database;

15

16  g.    requiring Defendant to segment data by creating firewalls and

17  access controls so that, if one area of Defendant's network is

18  compromised, hackers cannot gain access to other portions of

19  Defendant's systems;

20

21  h.    requiring Defendant to conduct regular database scanning and

22  securing checks;

23

24  i.    requiring Defendant to establish an information security training

25  program that includes at least annual information security

26  training for all employees, with additional training to be provided

27  as appropriate based upon the employees' respective

28

responsibilities with handling PII, as well as protecting the PII of Plaintiff and Class Members;

j.      requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

k.      requiring Defendant to implement, maintain, review, and revise as necessary a threat management program to monitor Defendant's networks for internal and external threats appropriately, and assess whether monitoring tools are properly configured, tested, and updated; and

l.      requiring Defendant to meaningfully educate all Class Members about the threats they face due to the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves.

6.      For prejudgment interest on all amounts awarded, at the prevailing legal rate;

7.      For an award of attorney's fees, costs, and litigation expenses, as allowed by law; and

8.     For all other Orders, findings, and determinations identified and sought in this Complaint.

**<u>JURY DEMAND</u>**

Plaintiff, individually and on behalf of the Plaintiff Class(es) and/or Subclass(es), hereby demands a trial by jury for all issues triable by jury.

Dated: September 28, 2023.

Respectfully submitted,

By:  */s/ Gerardo Avalos         .*

**Freedom Law Firm, LLC**
George Haines, Esq.
Gerardo Avalos, Esq. (15171)
8985 S. Eastern Avenue, Suite 100
Las Vegas, NV 89123
T: (702) 880-5554
F: (702) 385-5518
**ghaines@freedomlegalteam.com**

**DannLaw**
Marc Dann, Esq.*
Brian Flick, Esq.*
15000 Madison Avenue
Lakewood, OH 44107
T: (216) 373-0539
F: (216) 373-0536
mdann@dannlaw.com
bflick@dannlaw.com

**The Dann Law Firm, PC**
Javier Merino, Esq.*
1520 Hwy. 130, Ste. 101
North Brunswick, NJ 08902
T: (201) 355-3440
jmerino@dannlaw.com

**Laukaitis Law LLC**
Kevin Laukaitis, Esq.*
954 Avenida Ponce De Leon
Suite 205
San Juan, PR 00907
T: (215) 789-4462
klaukaitis@laukaitislaw.com

*Pro Hac Vice admission forthcoming*

Attorneys for Plaintiff(s) and the
Putative Class